## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**JOANNE H.,**[1]

      **Plaintiff,**

                                    **Case No. 3:21-cv-20092**

   **v.**                              **Magistrate Judge Norah McCann King**

**MARTIN J. O'MALLEY,**
**Commissioner of Social Security,**

      **Defendant.**

### <u>OPINION AND ORDER</u>

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Joanne H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

### I.    PROCEDURAL HISTORY

On February 25, 2020, Plaintiff filed her application for benefits, alleging that she has been disabled since January 14, 2019. R. 83–84, 96–102. The application was denied initially

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin J. O'Malley, the Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

and upon reconsideration. R. 103–08, 110–13. Plaintiff sought a *de novo* hearing before an

administrative law judge ("ALJ"). R. 114–15. ALJ Mark Solomon held a hearing on February

17, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational

expert. R. 28–70. In a decision dated March 25, 2021, the ALJ concluded that Plaintiff was not

disabled within the meaning of the Social Security Act from January 14, 2019, Plaintiff's alleged

disability onset date, through the date of that decision. R. 16–24. That decision became final

when the Appeals Council declined review on September 14, 2021. R. 1–7. Plaintiff timely filed

this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 25, 2022, Plaintiff consented to

disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and

Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] On July 26, 2022, the case was

reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ's DECISION AND APPELLATE ISSUES

Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 14, 2019, her alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff's multiple sclerosis is a severe impairment. *Id*. The ALJ also found that Plaintiff's hypothyroidism, status-post thyroid cancer, and depression were not severe. R. 18–19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 20.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 20–23. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a director, research and development, and project manager. R. 23. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 14, 2019, her alleged disability onset date, through the date of the decision. R. 24.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 18. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 17.

## IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

On March 18, 2020, Dina Jacobs, M.D., Plaintiff's treating physician who had treated

Plaintiff every three to six months (or more frequently, as needed) since 2014, completed a five-

page, check-the-box, and fill-in-the-blank form entitled, "Multiple Sclerosis Residual Functional

Capacity Questionnaire." R. 402–06. Dr. Jacobs diagnosed multiple sclerosis, noting that MRI

scans of the brain and of the cervical and thoracic spine confirmed the diagnosis. R. 402.

Plaintiff's symptoms were fatigue, balance problems, poor coordination, weakness (left side),

paralysis (facial palsy), unstable walking, numbness, tingling or other sensory disturbance,

increased muscle tension, bladder problems, sensitivity to heat, pain, difficulty remembering

(short-term / cognitive fogginess), depression, difficulty solving problems, double or blurred

vision, and trouble swallowing at times. *Id*. Dr. Jacobs did not respond to the question whether

Plaintiff has significant and persistent disorganization of motor function in two extremities

resulting in sustained disturbance of gross and dexterous movement or gait and station. *Id*.

However, she did respond to the question, "If yes, please describe the degree of interference with

locomotion and/or interference with the use of fingers, hands and arms[,]" by writing that

"numbness/tingling in hands that interferes with ability to grasp/fine motor skills, muscle

weakness & spasms in legs cause balance problems & unsteady gait." *Id*. Dr. Jacobs indicated

that Plaintiff has extreme limitation in standing from a seated position and maintaining balance

in a standing position while walking, including an inability to maintain an upright position

without the assistance of a walker and/or inability to stand and to remain upright without use of a

walker. R. 402–03. Asked to describe the degree of limitations in Plaintiff's standing and

walking, Dr. Jacobs responded that Plaintiff "uses walking stick at all times for severe balance

issues, difficulty walking for prolonged periods." R. 403. Asked whether Plaintiff complains of

fatigue that is best described as lassitude rather than fatigue of motor function, Dr. Jacobs

checked the answer "No[.]" *Id.* However, Dr. Jacobs went on to indicate that "this [is the] kind

of fatigue complaint typical of M.S. patients?" *Id.* She did not respond to the question whether

emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations.

*Id.* Dr. Jacobs also indicated that Plaintiff's impairments (physical impairments plus any

emotional impairments) were reasonably consistent with the symptoms and functional limitations

described in the evaluation. *Id.* According to Dr. Jacobs, Plaintiff's experience of pain, fatigue,

or other symptoms were severe enough to interfere with her attention and concentration. *Id.* She

also opined that Plaintiff was incapable of even "low stress" jobs but she did not respond when

asked to explain the reasons for that opinion. *Id.* Dr. Jacobs also stated that Plaintiff's

impairments have lasted or were expected to last at least twelve months and that the earliest date

that the descriptions and limitations in the questionnaire applied was 2014. *Id.* Dr. Jacobs opined

that Plaintiff could walk 2 to 3 city blocks without rest but with a walking stick; could sit one

hour at a time before needing to get up; could stand for 15 minutes at a time before needing to sit

down, walk around, etc.; could sit for a total of about 2 hours in an 8-hour work day (with

normal breaks); and could stand/walk for a total of less than 2 hours in an 8-hour work day (with

normal breaks). R. 404. Plaintiff would need to take unscheduled rest breaks lasting 15 to 20

minutes every hour before returning to work. *Id.* The doctor also opined that, with prolonged

sitting, Plaintiff's legs should be elevated to her comfort level. R. 405. Plaintiff could rarely

(meaning 1% to 5% of an 8-hour work day) lift and carry 10 pounds; could rarely twist; could

never stoop (bend), crouch, or climb ladders because of dizziness/balance problems; and could

occasionally (meaning 6% to 33% of an 8-hour work day) climb stairs with assistance. *Id.*

Plaintiff could grasp, turn, and twist objects with her hands for 25% of an 8-hour work day;

could use her fingers for fine manipulations for 20% of an 8-hour work day; and could use her arms for reaching, including overhead, for 40% of an 8-hour work day. R. 406. According to Dr. Jacobs, Plaintiff's impairments were likely to produce "good days" and "bad days," and that Plaintiff was likely to be absent from work more than four days per month as a result of her impairments or treatment. *Id*.

## V.   DISCUSSION

### A.   RFC and Opinion Evidence

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ erred in evaluating the opinion of Dr. Jacobs. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 20–31; *Plaintiff's Reply Brief*, ECF No. 18, pp. 3–5. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include

a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, an ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli*, 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant,

---

[4] As previously noted, Plaintiff's claim was filed on February 25, 2020.

including the length of the treating examination, the frequency of examinations, and the purpose

of the treatment relationship; (4) the medical source's specialization; and (5) other factors,

including, but not limited to, "evidence showing a medical source has familiarity with the other

evidence in the claim or an understanding of our disability program's policies and evidentiary

requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and

Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior

administrative medical findings are supportability (paragraph (c)(1) of this section) and

consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability

factor, the regulations provide that "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the

consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or

prior administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate his or her "consideration

of medical opinions and prior administrative medical findings" and articulate in the

"determination or decision how persuasive [he or she] find[s] all of the medical opinions and all

of the prior administrative medical findings in [the claimant's] case record." *Id*. at §

404.1520c(b).

In the case presently before the Court, the ALJ found at step four of the sequential

evaluation process that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform sedentary work as defined in 20 CFR
> 404.1567(a) with the ability to sit 6 hrs., stand/walk for a total of 2 hrs., lift/or carry
> 10 lbs. occasionally and 5 lbs. frequently, and would be limited to occasional
> climbing, balancing, stooping, kneeling, crouching and crawling; she would hav[e]
> to avoid concentrated exposure to weather extremes of cold and heat, unprotected
> heights and hazardous machinery.

R. 20. In reaching this determination, the ALJ found, *inter alia*, that Dr. Jacobs' opinion was

unpersuasive, reasoning as follows:

> The statement of Dina Jacobs, M.D. that the claimant has been limited to a less than
> sedentary level of exertion with manipulative and postural limitations since 2014 is
> unpersuasive (Exhibit 4F). The record reflects that the claimant was employed in a
> highly skilled position through 2019 and left her job due to a layoff and not her
> condition per her testimony. Further, the claimant's physical examinations have
> shown normal dexterity and coordination with some mild physical limitations but
> no limitations in concentration, memory or cognition.

R. 22.

Plaintiff raises a number of challenges to this evaluation. Plaintiff first contends that the

ALJ mischaracterized the evidence to the extent that he discounted Dr. Jacobs' opinion "based

upon her employment status at the time she stopped working[,]" arguing that the "ALJ's

mischaracterization is glaring when a proper consider[ation] of [Plaintiff's] testimony is

considered." *Plaintiff's Memorandum of Law*, ECF No. 8, p. 24; *Plaintiff's Reply Brief*, ECF No.

18, pp. 3–4. Plaintiff specifically argues that she testified that, even if her company had not

downsized, she did not think that she would have worked there much longer because it had

become increasingly difficult to work due to her stress and fatigue, her need to put her legs up,

her difficulty concentrating and focusing, and her "fogginess". *Plaintiff's Memorandum of Law*,

ECF No. 8, pp. 24–25 (citing R. 36, 43). Before she stopped working, she had received

13

accommodations—which the ALJ did not consider—including permission to give presentations sitting down because her balance and vision issues were worsening; days off work because of fatigue and pain in her legs; and permission to work from home. *Id*. at 25–26. (citing R. 45–46). According to Plaintiff, the ALJ's failure to consider "the accommodated nature of Plaintiff's work" and reliance on evidence related to losing her job only because of a layoff "does not provide substantial evidence to support the ALJ's rejection of Dr. Jacob's [sic] opinion." *Id*. at 26.

Plaintiff's argument is not well taken. The record unambiguously establishes that Plaintiff was laid off from her job. R. 35 ("Q: Okay. And according to your records the reason you left [your job] was because due to company downsizing; is that correct?   A: Yes, correct. Two hundred of us were downsized at that time in January [of 2019]."), 280 ("She is not employed. She was last employed as a vice president in portfolio and projects management for medical devices for 11 years. Reason for leaving – company downsized."). The existence of certain purported accommodations at work does not change the fact that Plaintiff lost her job—along with two hundred other employees—due to company downsizing. R. 35. The ALJ therefore did not mischaracterize the record evidence when he consider—as one of the factors in discounting Dr. Jacobs' opinion—that Plaintiff held a highly skilled position that she left due to a layoff.

Plaintiff next complains that the ALJ's finding that Plaintiff's physical examinations showed "normal dexterity and coordination with some mild physical limitations but no limitations in concentration, memory or cognition" does "not provide substantial evidence to reject the entirety of the limitations identified by Dr. Jacobs." *Plaintiff's Memorandum of Law*, ECF No. 8, p. 26 (citing R. 22). Plaintiff specifically argues that Dr. Jacobs "opined that Plaintiff would need the assistance of a walking stick at all times" and that Plaintiff's fatigue, which,

"according to Dr. Jacobs, was entirely typical for patients with MS accounts for these [opined] exertional limitations." *Id*. at 26–27. Plaintiff further argues that her fatigue was severe enough to interfere with the concentration necessary to work and apparently supports Dr. Jacobs' finding that Plaintiff would have difficulty with manipulative activities, that she would be off task more than 25% of the day, and would be absent more than four days per month. *Id*. at 27 (citing R. 403, 406).

Plaintiff's arguments are not well taken. As a preliminary matter, it is true that Dr. Jacobs did answer in the affirmative the question asking whether Plaintiff has an extreme limitation in standing from a seated position and maintaining balance in a standing position while walking, including an inability to maintain an upright position without the assistance of a walker and/or inability to stand and remain upright without the use of a walker; Dr. Jacobs also stated that Plaintiff "uses walking stick at all times for severe balance issues, difficulty walking for prolonged periods." R. 402–03. However, Dr. Jacobs left blank the question asking whether Plaintiff must use a cane or other assistive device while engaging in occasional standing/walking. R. 405. Notably, although Plaintiff reported an increased need to use a walking stick in December 2020, the ALJ specifically noted at step four that physical examinations reflected normal—or, at most, mild—issues with Plaintiff's gait until that time. R. 21–22. Finally, Plaintiff admitted that the walking stick had not been prescribed. R. 207 (writing in her May 27, 2020, function report that she used a walking stick when walking outside but that such device had not been prescribed by a doctor). Where there is no prescription for a walking stick and because Dr. Jacobs did not indicate whether Plaintiff must use a cane or other assistive device for occasional standing/walking, the Court cannot say that Plaintiff's walking stick is medically necessary. R. 207, 405; *see also* SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) ("To find that a

hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information."). Accordingly, based on this record, the ALJ did not err in failing to include in Plaintiff's RFC a limitation relating to Dr. Jacobs' observation that Plaintiff used a walking stick for severe balance issues and for walking for prolonged periods. *See Mundo v. Kijakazi*, No. 1:21-CV-517, 2023 WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023) ("[An] ALJ need not account for use of a hand-held assistive device in an RFC assessment unless that device is medically required.").

Similarly unavailing is Plaintiff's argument that her fatigue sufficiently supported Dr. Jacobs' "exertional limitations" (otherwise unidentified by Plaintiff) and opined limitations in concentration and in manipulative activities as well as her opinion that Plaintiff would be off task more than 25% of the workday and would be absent more than four days per month. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 26–27. As a preliminary matter, Dr. Jacobs' opinion in this regard is inconsistent: She checked the answer "No" when responding to the question asking if Plaintiff complained of a type of fatigue that is best described as lassitude rather than fatigue of motor function, yet she checked "Yes" when answering that, if the earlier answer was yes, was this the kind of fatigue typical of MS patients. R. 403. However, even assuming that Dr. Jacobs mistakenly checked "No" instead of "Yes" when responding to the earlier question regarding fatigue, the Court is not persuaded this issue requires remand. The ALJ noted at step four that the record reflected "subjective complaints of *mild* fatigue[,]" R. 22 (emphasis added), stating that he had expressly "considered the claimant's allegations of fatigue, yet the record does not support that she would be unable to do her past work or be off task or miss time as the

16

result of the fatigue, based on her activities as well as treatment records." R. 23. The ALJ also considered that neurological examinations revealed normal speech, attention, and memory as well as intact comprehension. R. 21–22. Based on this record, the Court is not persuaded that the ALJ erred in relying on this evidence or that Plaintiff's fatigue provides substantial evidence to support Dr. Jacobs' extreme limitations.

Plaintiff also complains that the ALJ did not properly consider and explain the regulatory factors of consistency and supportability when discounting Dr. Jacobs' opinion. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 28–31; *Plaintiff's Reply Brief*, ECF No. 18, pp. 3–5. As to consistency, Plaintiff argues that the ALJ did not explain how portions of Dr. Jacobs' opinion were inconsistent with the evidence. *Plaintiff's Memorandum of Law*, ECF No. 8, p. 28. Plaintiff's argument is not well taken. The ALJ expressly acknowledged the proper standard under 20 C.F.R. § 404.1520c. R. 20. Moreover, as previously discussed, the ALJ, in discounting Dr. Jacobs' extreme limitations, expressly considered that physical examinations had revealed "normal dexterity and coordination with some mild physical limitations but no limitations in concentration, memory or cognition." R. 22; *see also* R. 21–22 (reflecting the ALJ's consideration of record evidence reflecting normal or mild examination findings; Plaintiff's daily functional activities; the ALJ's finding that the state agency medical consultants' opinions that Plaintiff was capable of light exertional work were partially persuasive based on generally minimal findings with subjective complaints of generally mild issues; and the ALJ's finding that the state agency mental consultants' opinions that Plaintiff's mental impairment is nonsevere were substantially persuasive). A fair reading of the decision establishes that the ALJ found that Dr. Jacobs' extreme limitations were not persuasive because they were not consistent with other record evidence as reflected in the mostly unremarkable physical findings detailed by the ALJ as

17

well as other opinion evidence. *See B.K. v. Comm'r of Soc. Sec. Admin.*, No. CV 21-5732, 2022
WL 1718047, at *4 (D.N.J. May 27, 2022) ("In terms of consistency, a medical opinion will be
more persuasive when it is consistent 'with the evidence from other medical sources and
nonmedical sources in the claims.'") (internal citations omitted); *Crossley v. Kijakazi*, No. 3:20-
CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly
evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*,
physical examinations that routinely noted the claimant to have normal range of motion, no
tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and
coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25,
2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was
not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild
findings on "multiple physical examinations" and mild radiographic findings); *cf. Diaz*, 577 F.3d
at 504 ("The ALJ, of course, need not employ particular 'magic' words: '*Burnett* does not
require the ALJ to use particular language or adhere to a particular format in conducting his
analysis.'") (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)); *Serrano v. Kijakazi*,
No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ
discussed and analyzed the evidence extensively before determining the persuasiveness of the
medical opinions. . . . The ALJ was not required to repeat this information for the sake of
elaborating on her findings of persuasiveness.").

Plaintiff nevertheless insists that the ALJ erred by failing to properly consider evidence
that she believes is consistent with Dr. Jacobs' extreme limitations. *Plaintiff's Memorandum of
Law*, ECF No. 8, p. 28 (citations omitted). However, the Court "will uphold the ALJ's decision
even if there is contrary evidence that would justify the opposite conclusion, as long as the

'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199,

201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also*

*Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021)

("Yet we cannot reweigh the evidence or make our own factual determinations."); *Chandler*, 667

F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual

determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec.*

*Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon

situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that

conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Moreover, the ALJ

expressly noted contrary evidence—Plaintiff's testimony regarding her limitations as well as

reports of increased imbalance and dizziness in December 2020—but nevertheless concluded

that Dr. Jacobs' opinion was not persuasive. R. 21–22. While Plaintiff apparently insists that the

ALJ accept this evidence, Plaintiff's argument in this regard boils down to simply a

disagreement with the ALJ. The Court therefore declines Plaintiff's invitation to re-weigh the

evidence or to impose her–or this Court's–own factual determination. *See Perkins v. Barnhart*,

79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a

disagreement with the ALJ's decision, which is soundly supported by substantial evidence.").

     Plaintiff goes on to contend that the ALJ improperly failed to explain how he considered

the supportability of Dr. Jacobs' opinion and failed to address this physician's supportive

explanations offered in her responses in the questionnaire. *Plaintiff's Memorandum of Law*, ECF

No. 8, pp. 28–30; *Plaintiff's Reply Brief*, ECF No. 18, pp. 3–5. Plaintiff's arguments are not well

taken. In summarizing the relevant medical evidence, the ALJ expressly detailed evidence from,

*inter alia*, Dr. Jacobs' own treatment notes that reflected normal or only mild physical findings

as well as normal or intact speech, attention, memory, and comprehension. R. 21–22 (citing, *inter alia*, Exhibits 3F (R. 285–401), 9F (R. 509–35)). It is true that the ALJ did not expressly identify this evidence as Dr. Jacobs' treatment notes. However, implicit in the ALJ's discussion of this evidence, R. 21–22, and the ALJ's statement noting such physical and mental findings when discounting Dr. Jacobs' opinion, R. 22, is that Dr. Jacobs' own treatment notes did not support her extreme opined limitations. *See Pipkin v. Kijakazi*, No. CV 22-2-E, 2023 WL 411291, at *1 (W.D. Pa. Jan. 25, 2023) ("'[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.'") (quoting *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021)); *Tyler E. K. v. Comm'r of Soc. Sec.*, No. 21-9623, 2022 WL 3913559, at *6 (D.N.J. Aug. 31, 2022) (finding the ALJ appropriately considered the supportability and consistency factors by citing the physician's treatment notes and other evidence in the record). Moreover, as previously noted, the ALJ was not required to employ any special or magic language when considering opinion evidence in accordance with the applicable regulations. *Cf. Diaz*, 577 F.3d at 504.

To the extent that Plaintiff may complain that the ALJ did not identify and discuss why the objective evidence reported by Dr. Jacobs did not support that physician's opinion, the Court notes that Dr. Jacobs offered no explanation to support most of her opinion, including her opinion that Plaintiff's experience of symptoms was severe enough to frequently interfere with attention and concentration; that Plaintiff was incapable of even "low stress" jobs; that Plaintiff could sit for a total of 1 hour at a time and could stand for 15 minutes at a time; that Plaintiff could sit for a total of about 2 hours and could stand/walk for a total of less than 2 hours in an 8-

hour work day; that she needed a job that permits shifting positions at will; that she needed to take unscheduled breaks every hour for 15-20 minutes; that she needed to elevate her legs 50% of an 8-hour work day; that she had significant manipulative limitations; and that she would likely be absent from work more than four days per month. R. 403–06; *see also Hale v. Kijakazi*, No. CV 22-14-E, 2023 WL 2573387, at *1 n.2 (W.D. Pa. Mar. 20, 2023) (affirming the ALJ's decision denying benefits where, *inter alia*, "[t]he ALJ only briefly addressed supportability, but that is not unexpected as NP Donikowski's opinions were rendered largely without accompanying explanations"). To the extent that Dr. Jacobs did provide an explanation for a need to use a walking stick for walking for prolonged periods, R. 403, this Court has already explained why the ALJ's failure to adopt this portion of the opinion does not amount to reversible error.

Accordingly, based on this record, the Court cannot conclude that the ALJ failed to properly consider the supportability and consistency of Dr. Jacobs' opinion in accordance with the governing regulation. For all these reasons, the ALJ's RFC enjoys substantial support in the record.

### B.      Subjective Statements

Plaintiff also complains that the ALJ failed to properly consider Plaintiff's subjective statements. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 12–20; *Plaintiff's Reply Brief*, ECF No. 18, pp. 1–3. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ

"must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms). Finally,

an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v.

Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported

by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. §

416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]
reviewing court typically defers to an ALJ's credibility determination so long as there is a
sufficient basis for the ALJ's decision to discredit a witness.").

In the present case, the ALJ followed this two-step evaluation process. The ALJ
specifically considered Plaintiff's subjective complaints. R. 21. The ALJ found that Plaintiff's
medically determinable impairments could reasonably be expected to cause symptoms, but that
Plaintiff's statements "concerning the intensity, persistence and limiting effects of these
symptoms are not entirely consistent with the medical evidence and other evidence in the record
for the reasons explained in this decision." *Id*. As previously discussed, the ALJ detailed years of
medical evidence and record testimony to support his findings, including generally normal or
intact—or, at worst, mild—physical examination findings and normal mental examination
findings. R. 21–22. The ALJ also considered Plaintiff's level of functioning as reflected in her
activities, including her ability to prepare meals, complete some kitchen chores, care for pets,
read, perform personal care, engage in light gardening, drive a car, and shop. R. 22. The ALJ
further explained as follows:

> In sum, the claimant's complaints and alleged limitations are out of proportion to
> the objective findings. The evidence establishes that the claimant has the residual
> functional capacity to perform work with the limitations identified above. The
> claimant's residual functional capacity adequately accommodates the effects of her
> impairments. Further, I have evaluated all of the medical evidence and medical
> opinions submitted; and the evidence of record supports the above listed residual
> functional capacity. Despite the claimant's allegations in this case, I am not
> persuaded that her impairments are disabling. I have considered the claimant's
> allegations of fatigue, yet the record does not support that she would be unable to
> do her past work or be off task or miss time as the result of the fatigue, based on
> her activities as well as treatment records.

R. 22–23. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

In challenging the ALJ's finding in this regard, Plaintiff complains that the ALJ should not have discounted her subjective statements based on a lack of objective evidence—improperly relying on "mild" or "stable" record evidence—because multiple sclerosis is episodic in nature and because, in any event, the evidence reflected new lesions in Plaintiff's brain over the relevant period. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 15–17 (citing, *inter alia*, *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986)). Plaintiff's arguments are not well taken. It is true that "multiple sclerosis in general . . . is episodic in nature, with the symptoms becoming more and less severe as the disease progressively debilitates the victim." *Dorf*, 794 F.2d at 901. However, in *Dorf*, the ALJ had improperly ignored reported evidence of decreased pain sensation in the claimant's legs, *i.e.*, evidence of a deterioration of the claimant's disabling condition. *Id.* In the present case, the ALJ did not disregard medical evidence, having detailed normal or mild examination findings as well as "intact sensation to light touch with decreased vibratory sensation in her toes." R. 21–22. In finding Plaintiff's testimony not entirely credible, the ALJ "reasonably considered the objective medical evidence showing" these normal or mild findings. *Gloria v. Berryhill*, 272 F. Supp. 3d 643, 655 (D. Del. 2017). Although the ALJ noted that Plaintiff had reported that "she had been stable with some intermittent hand tingling[,]" R. 21, that was but one piece of evidence that the ALJ considered when discounting Plaintiff's subjective statements. R. 21–22; *see Gloria*, 272 F. Supp.3d at 656 ("The ALJ further considered the records describing Gloria as 'well' and his MS as 'stable.' . . . Gloria contends that the ALJ erred in using these as factors in assessing his credibility. However, a finding that a medical

24

condition is stable, while not dispositive, is a factor the ALJ may consider in determining a claimant's credibility.") (citations omitted).

Plaintiff contends that Dr. Jacobs documented new brain lesions during the relevant period which, according to Plaintiff, was consistent with her "chronic fatigue flairs[.]" *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 16–17 (citing R. 312, 332, 342, 352, 361, 369, 380, 536). The Court is not persuaded that the existence of these lesions requires remand. As an initial matter, all but one of these cited records predates Plaintiff's alleged disability onset date of January 14, 2019. *See* R. 312 (October 21, 2015), 332 (March 7, 2017), 342 (July 12, 2017), 352 (October 18, 2017), 361 (January 23, 2018), 369 (July 2, 2018), 380 (January 2, 2019), 536 (January 7, 2021). While the ALJ may consider this evidence, *see Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 120 (3d Cir. 2020) (citing *Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007); 20 C.F.R. § 416.912), this evidence was not entitled to controlling or, indeed, any particular weight. *Id*. at 120 (finding that the ALJ "was entitled to discount" an opinion letter where the opinion was written before the claimant's application date and alleged disability onset date and where the opinion was inconsistent with the medical record); *Dennis-Orshak v. Berryhill*, No. 3:18-CV-15987, 2020 WL 4364330, at *4 (D.N.J. July 30, 2020) (finding that the ALJ did not err in giving no weight to a report that predated the alleged disability onset date). In any event, the examination findings on the dates of Plaintiff's cited evidence do not persuade this Court that the ALJ erred in discounting Plaintiff's subjective complaints. *See* R. 310 (reflecting that Plaintiff reported moderate fatigue with extremity pain and tingling on October 21, 2015, but findings reflected normal visual, motor, ambulatory, coordination, and speech and no headaches or dizziness), 311 (reflecting normal fluent speech, intact comprehension, normal attention span, memory, and affect on October 21, 2015), 312 (normal strength in the upper and lower

extremities, intact coordination, narrow-based gait with no evidence of ataxia, and normal toe, heel, tandem, and hopping, intact sensorium to light touch, temperature with decreased vibration in the fingers and toes, 3+ reflexes in the bilateral upper and lower extremities), 329 (reflecting Plaintiff's complaints on March 7, 2017, of being "a little bit dizzy and nauseous in the past 2 months" and "denies any other new symptoms. She has some mild balance problems. No falls"), 331 (reflecting findings on March 7, 2017, of normal fluent speech; intact comprehension; normal attention span, memory, and affect; normal motion strength in the bilateral upper and lower extremities; intact coordination; narrow-based gait with no evidence of ataxia, and normal toe, heel with mild ataxia with tandem; intact sensory to light touch, temperature with decreased vibration at the ankles; 3+ reflexes in the bilateral upper and lower extremities), 340 (reflecting Plaintiff's reports of mild fatigue on July 12, 2017), 341–42 (reflecting on July 12, 2017, normal fluent speech; intact comprehension; normal attention span, memory, and affect; normal motion strength in the bilateral upper and lower extremities; intact coordination; narrow-based gait with no evidence of ataxia and normal toe, heel with mild ataxia with tandem; intact sensory to light touch, temperature with decreased vibration in the toes; 3+ reflexes in the bilateral upper and lower extremities), 350 (reflecting Plaintiff's reports of mild fatigue on October 18, 2017), 351 (reflecting findings on October 18, 2017, of normal fluent speech; intact comprehension; normal attention span, memory, and affect; normal motion strength in the bilateral upper and lower extremities; intact coordination; narrow-based gait with no evidence of ataxia and normal toe, heel with mild ataxia with tandem; intact sensory to light touch, temperature with decreased vibration in the toes; 3+ reflexes in the bilateral upper and lower extremities), 359 (reflecting Plaintiff's reports of mild fatigue on January 23, 2018), 360 (reflecting findings on January 23, 2018, of normal fluent speech; intact comprehension; normal attention span, memory, and affect;

normal motion strength in the bilateral upper and lower extremities; intact coordination; narrow-based gait with no evidence of ataxia and normal toe, heel with mild ataxia with tandem; intact sensory to light touch, temperature with decreased vibration in the toes; 3+ reflexes in the bilateral upper and lower extremities), 367 (reflecting Plaintiff's reports of mild fatigue on July 2, 2018), 368–69 (reflecting findings on July 2, 2018, of normal fluent speech; intact comprehension; normal attention span, memory, and affect; normal motion strength in the bilateral upper and lower extremities; intact coordination; narrow-based gait with no evidence of ataxia and normal toe, heel with mild ataxia with tandem; intact sensory to light touch, temperature with decreased vibration in the toes; 3+ reflexes in the bilateral upper and lower extremities), 378 (reflecting Plaintiff's reports of mild fatigue on January 2, 2019), 379 (reflecting findings on January 2, 2019, of normal fluent speech; intact comprehension; normal attention span, memory, and affect; normal motion strength in the bilateral upper and lower extremities; intact coordination; narrow-based gait with no evidence of ataxia and normal toe, heel with mild ataxia with tandem; intact sensory to light touch, temperature with decreased vibration in the toes; 3+ reflexes in the bilateral upper and lower extremities).

Plaintiff also argues that ALJ discounted subjective statements because of Plaintiff's conservative treatment *Plaintiff's Memorandum of Law*, ECF No. 8, p. 17. However, the ALJ never discussed discounting Plaintiff's statements on this basis. *See generally* R. 20–23.

Plaintiff goes on to complain that the ALJ failed to properly consider her daily life activities because the ALJ failed to take into account limitations in Plaintiff's ability to perform these activities. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 17–20. Plaintiff's argument is not well taken. The ALJ expressly considered Plaintiff's testimony that, *inter alia*, "she loads her dishwasher but has a cleaning service that completes her other household chores." R. 21.

Moreover, as set forth above, in considering that Plaintiff could "prepare meals, complete some kitchen chores, care for pets, read, and perform personal care unassisted" as well as "engage in light gardening, drive a car, and shop[,]" the ALJ expressly relied on Plaintiff's activities as Plaintiff herself had reported them. R. 22 (citing Exhibit 5E, Plaintiff's Function Report, R. 199–208). To the extent that Plaintiff now complains that she no longer plants and tills like she used to, *Plaintiff's Memorandum of Law*, ECF No. 8, p. 18, the ALJ specifically noted that Plaintiff could perform only "*light* gardening[.]" R. 22 (emphasis added). Moreover, the ALJ did not completely discount Plaintiff's subjective complaints; instead, he explained how he fashioned an RFC that took into consideration Plaintiff's subjective complaints as well as other record evidence. R. 22–23. *see also Longboat v. Berryhill*, No. CV 17-146-E, 2018 WL 4157067, at *1 (W.D. Pa. Aug. 30, 2018) (finding, *inter alia*, that the "ALJ did not entirely discount Plaintiff's allegations of pain in his decision; rather, he appropriately found that Plaintiff indeed suffered from moderate pain, but still retained the capacity for light work with additional restrictions"); *Morel v. Colvin*, No. 14-2934, 2016 WL 1270758, at *6 (D.N.J. Apr. 1, 2016) ("The claimant need not be pain-free to be found 'not disabled.'"). Although Plaintiff insists that the activities reported by her are not the equivalent of her past relevant work, those activities were but some of the things—along with medical examination findings—that the ALJ considered when assessing Plaintiff's subjective statements. R. 21–23. In any event, this Court must affirm the ALJ's decision when it is supported by substantial evidence even if Plaintiff points to evidence that supports the opposite conclusion. *See Johnson*, 497 F. App'x at 201.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's

28

deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn*, 717 F.2d at 873); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints will not serve as a basis for remand of this action. *Id.*

## VI.   CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 10, 2024                          *s/Norah McCann King*
                                              NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE